```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
_____
                              :
UNITED STATES OF AMERICA      :
                              :   Crim. No. 11-798 (NLH)
     v.                       :
                              :
RICHARD CACERES,              :   OPINION
                              :
          Defendant           :
_____:
```

**APPEARANCES**:

LISA EVANS LEWIS
OFFICE OF THE FEDERAL PUBLIC DEFENDER
800-840 COOPER STREET
CAMDEN, NJ 08053

   *Counsel for Defendant*

MICHAEL BURKE
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

   *Counsel for the United States*

**Hillman, District Judge**

Before the Court are Richard Caceres' ("Defendant") Motions for Reduction of Sentence under the First Step Act 18 U.S.C. § 3582(c)(1)(A). (ECF 32, 35). For the reasons expressed below, Defendant's Motions will be denied.

1

**Background**

Defendant was arrested on October 14, 2010 for distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (ECF 35 -1 at 1). Thereafter, on March 30, 2012, Defendant pled guilty, pursuant to a plea agreement, to distribution and possession with the intent to distribute cocaine in violation of the aforementioned laws. (ECF 37 at 2; ECF 22). This Court subsequently imposed a sentence of 151 months of imprisonment followed by 3 years of supervised release. (ECF 37 at 2; ECF 23).

Following the completion of his sentence, Defendant is set to be taken into the Custody of U.S. Immigration and Customs Enforcement ("ICE") for deportation to the Dominican Republic. (ECF 35-1 at 2-3). Defendant's release date is projected for November 6, 2023 and currently he has served over 85% of his sentence. (ECF 38).

Defendant first moved before this Court for compassionate release in a *pro se* motion filed on September 9, 2020 (ECF 32) (the "September Motion") and followed up with a counseled supplemental motion on November 23, 2020 (ECF 35) (the "November Motion"). The Government filed a letter brief in opposition to

the November Motion on December 28, 2020 (the "Opposition").[1] (ECF 37).

In the November Motion, Defendant states that he has exhausted all of his administrative remedies (ECF 35-1 at 4), which the Government does not contest (ECF 37 at 3). Indeed, the November Motion attaches as an exhibit a letter dated October 15, 2020 from Defendant to the Warden at FCI Berlin seeking relief. (ECF 35-2). Defendant states that he never received a response.[2] (ECF 35-1 at 4).

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" <u>United States v. Sellers</u>, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP

---

[1] Notably, neither the November Motion nor the Opposition addresses the September Motion, beyond a passing mention in the November Motion that the September Motion is pending before the Court. (ECF 35-1 at 2). In any case, because the November Motion seeks the same relief as that in the September Motion, the Court will treat both a-piece.

[2] It also appears based on the September Motion that Defendant wrote to the warden seeking relief on July 17, 2020 and that he did not receive a response to that request either. (ECF 32 at 2, 17).

3

thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in this case after applying to the warden of FCI Berlin on October 15, 2020.  (ECF 35-1 at 3-4).  The warden never replied to the request, and more than thirty days have since passed. (Id.)  The Government agrees that Defendant has exhausted his

4

administrative remedies (ECF 37 at 4), as required by the statute.

2. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. Specifically, Defendant argues that he is at an increased risk for severe illness and death if he contracts COVID-19 due to his underlying health conditions. (ECF 35-1 at 4). According to the November Motion, he suffers from obesity at a Body Mass Index of 30, hypertension and hyperlipidemia. (Id.) Defendant states that because of his medical conditions, he "is seen regularly by the chronic care team at FCI Berlin." (Id. at 5.)

In the November Motion, Defendant argues that the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement altogether constitute extraordinary and compelling reasons sufficient to reduce his prison sentence. (ECF 35-1 at 5-6). Defendant contends that "[m]ultiple studies show that most patients hospitalized with COVID-19 had chronic health issues" like him. (Id. at 5). As of the time of the filing of the November Motion, Defendant states that there were 13 positive cases among inmates and staff at FCI Berlin. (Id. at 5-6). Defendant also cites cases in the District of New Jersey where "immediate relief was granted after

5

the BOP granted an inmate's request for home confinement but delayed their release. (Id. at 7-8). He also cites more broadly nationwide cases in which Courts have granted inmates' requests for compassionate release where they were subject to ICE detainers. (Id. at 8-9).

The Government disagrees that Defendant presents "extraordinary and compelling" reasons for his release. First, it contends that Defendant's medical conditions do not fall into the category of conditions that § 3582(c) contemplates as set forth in implementing policy statements issued by the Sentencing Commission. (ECF 37 at 3-4) (citing U.S.S.G. § 1B1.13, cmt. n.1(A)). Specifically, the Government points out that Defendant's conditions do not include a terminal illness or a serious condition which substantially impairs Defendant's ability to care for himself at FCI Berlin. (Id. at 4). The Government further argues that Defendant has not shown that he is less likely to contract COVID-19 if he is released (Id. at 5, 7) and that the BOP has been effectively handling the COVID-19 pandemic. (Id. at 5-7).

The Court takes seriously Defendant's concerns about the effect of COVID-19 on his health and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly. That said, the Court holds that Defendant has not met that standard. First, the Court finds

6

instructive, although not binding,[3] the guidance by the Sentencing Commission as incorporated by § 3582(c). Defendant's medical conditions, while chronic, are not of the sort that militate toward release under § 3582(c)(1)(A). As the Government noted, the applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. (ECF 37-4); U.S.S.G. § 1B1.13, cmt. n.1(A). While the Court agrees that Defendant's medical conditions are chronic, it cannot say that it falls into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." U.S.S.G. § 1B1.13, cmt. n.1(A). It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the

---

[3] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act. Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different. As set for in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

environment of a correctional facility and from which he...is not expected to recover." Id. Defendant has not shown that he cannot care for himself. To the contrary, he appears to be adequately managing his conditions with medication and oversight from the chronic care team at FCI Berlin. (ECF 35-1 at 5). In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant's medical conditions, even with the possibility of contracting COVID-19, warrant his release.

Additionally, FCI Berlin's mitigation efforts at controlling the spread of the coronavirus appear to be effective. Currently, FCI Berlin has zero (0) active inmate positive tests and four (4) staff positive tests.[4] Over the course of the pandemic, no inmates or staff members have died due to the coronavirus, and 480 inmates have recovered from positive infections.[5] Id.

Defendant's vaccination status is unsurprisingly unclear, given that the briefing was completed prior to the vaccines being widely available. However, according to the BOP, 582 inmates at FCI Berlin out of a population of 694 have been fully

---

[4] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited March 10, 2022).

[5] Id.

vaccinated.[6]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Berlin weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Berlin, does not present "extraordinary and compelling" reasons supporting his release. The effective management of his health conditions by BOP medical personnel and FCI Berlin's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

### 3. **3553(a) Factors weigh against Defendant's Favor**

Even if Defendant could establish extraordinary and compelling reasons for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant claims that he satisfies all four of the § 3553(a)(2) factors.  Specifically, he argues that he has already completed over 85% of his sentence and it would not be

---

[6] Id.; see also FEDERAL BUREAU OF PRISONS, FCI BERLIN, https://www.bop.gov/locations/institutions/ber/ (last visited March 10, 2022).

9

inconsistent with the spirit of that sentence to release him a few months early. (ECF 35-1 at 13). He further argues that at his current age of 51 years-old the risks of recidivism are low and that he will be able to better care for his health if he is released to ICE custody and then sent to the Dominican Republic. (Id. at 14-15).

The Court agrees with the Government's position that overall the § 3553(a) factors weigh against the Defendant. Specifically, the Government is correct that the Court already considered the factors when imposing the initial sentence and determined that it was appropriate and that the only change since then is the advent of COVID-19. (See ECF 37 at 8).

Judge Simandle, the judge previously assigned to the matter, after careful consideration of the record, imposed a sentence of 151 months of imprisonment to reflect the seriousness of the offense. At the sentencing hearing on August 16, 2012, Judge Simandle carefully parsed the § 3553(a) factors in determining an appropriate sentence. Specifically, Judge Simandle considered the fact that the Defendant never held lawful employment in the United States and after he was deported to the Dominican Republic, the Defendant illegally reentered the United States to continue working as a drug dealer. (ECF 29, 29: 5-23). 18 U.S.C. § 3553(a)(1). Judge Simandle considered the fact that the Defendant committed the crime for which he is

10

currently incarcerated while he was under a term of supervised release in the Eastern District of Pennsylvania.  (Id. at 4-6). 18 U.S.C. § 3553(a)(2)(C).  Further, Judge Simandle noted the large quantity of cocaine that to which the record showed the Defendant had access and determined that in addition to general deterrence "the individual deterrence factor for Mr. Caceres is about as high as it could be for any individual."  (Id. at 30:13- 31:7). 18 U.S.C. § 3553(a)(2)(B).  Finally, Judge Simandle noted that rehabilitation was not a weighty factor given that the Defendant would be deported at the end of his incarceration and determined that the sentence was consistent with mental health considerations.  (Id. at 31:25- 32:11). 18 U.S.C. § 3553(a)(2)(D).  The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motions for Compassionate Release (ECF 32, 35) will both be denied.  An accompanying Order shall issue.

Dated: March 10, 2022                     s/ Noel L. Hillman
At Camden, New Jersey                     NOEL L. HILLMAN, U.S.D.J.